**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **DAVID VAN ELZEN**, individually and on behalf of all others similarly situated, | CASE NO. |
| *Plaintiff,* | |
| *v.* | **CLASS ACTION COMPLAINT** |
| **MOBILEHELP, LLC** a Delaware limited liability company, | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff David Van Elzen ("Plaintiff" or "Van Elzen") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant MobileHelp, LLC ("Defendant" or "MobileHelp") to stop its practice of making unsolicited prerecorded solicitation telephone calls and text messages to the cellular telephones of consumers nationwide and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendant MobileHelp provides "Mobile-Personal Emergency Response Systems" and products to elderly consumers that will alert MobileHelp if the elderly consumer has an emergency, be it medical or otherwise.[1]

---

[1] https://www.mobilehelp.com/.

2.     Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote Defendant's business and services in the elderly-care-and-response industry, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the making of repeated unsolicited prerecorded telephone calls and automated text messages to consumers' cellular telephones, including those that appear on the National Do Not Call Registry, without consent -- all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

3.     By making the prerecorded telephone calls and sending the text messages at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation, annoyance, and nuisance and invasions of privacy that result from the receipt of such calls and/or text messages in addition to the loss of memory  in the phones themselves the text messages take up and the loss of  money consumers paid to their wireless carriers for the receipt of such calls and/or text messages. Furthermore, the calls and/or text messages interfered with Plaintiff's and the other Class members' use and enjoyment of their cellular telephones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular data and minutes.

4.     The TCPA was enacted to protect consumers from unsolicited telephone calls and text messages like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling and text messaging activity to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

5.      Plaintiff David Van Elzen is a natural person and citizen of the State of Wisconsin, residing in the City of Tomahawk.

6.      Defendant MobileHelp, LLC is a corporation organized and existing under the laws of the State of Delaware with headquarters located at 3701 FAU Boulevard, Suite 300, in Boca Raton, Florida 33431.[2]  MobileHelp, LLC is formerly known as Integrity Tracking, LLC.[3]

## JURISDICTION AND VENUE

7.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

8.      The Court has personal jurisdiction over Defendant because it solicits significant business in this District, has entered into business to business contracts in this District and the unlawful conduct of unsolicited text messages and calls occurred in and/or was directed to this District.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and the causes of action arose, in substantial part, in this District. Venue is additionally proper as Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

10.     Defendant contacts consumers using autodialing technology and prerecorded messages in an effort to solicit consumers into utilizing and/or purchasing its medical products

---

[2]http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=INTEGRITYTRACKING%20M080000016580&aggregateId=forl-m08000001658-c89fbab4-e237-484b-b0cb-ad4359eae7d7&searchTerm=integrity%20tracking&listNameOrder=INTEGRITYTRACKING%20M080000016580

[3] https://www.corporations.pa.gov/search/corpsearch.

and/or services, as shown below.





---

[4] This image reads, "By submitting this form, you agreed to give your electronically signed prior express written consent and authorization to be contacted by or on behalf of MobileHelp on your wireless and/or other phone numbers you provided above, including by *SMS/texts, autodialed, pre-recorded and/or artificial voice calls for the marketing of MobileHelp's goods or services even if you are on the federal, any state's and/or MobileHelp's Do-Not-Call registry* or list and for all other purposes … (emphasis added).

[5] This image refers to a "Five 9 Dialer" which Five 9 claims "is an automated telephone dialing system that enables call centers and agents to dramatically increase their number of live connections. *See* http://www.five9.com/products/virtual-contact-center/predictive-dialer.

11.     In Fact, on one of Mobile Help's job postings they list under their Education and/or Experience section that "Five 9 Dialer preferred."[6] Five9 is a cloud contact center software that provides for predictive dialer capabilities.[7]

12.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

13.     Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

14.     Yet in violation of the FCC's rule, Defendant fails to obtain any prior express written consent to send these prerecorded phone calls and autodialed text messages to cellular telephone numbers.

15.     Consumer complaints about Defendant's invasive and repetitive calls and text messages are legion. As a sample, consumers have complained as follows:

- I keep receiving solicitation calls and mail from MobileHelp even though I asked them to quit.  I called and they were very rude when I said stop.  I made the mistake of contacting MobileHelp for a price quote.  I called them a few days

---

[6]
https://www.appone.com/MainInfoReq.asp?R_ID=1510734&B_ID=83&FID=&Ad=&Refer=&ssbgcolor=&SearchScreenID=5216&CountryID=3

[7] http://www.five9.com/products/virtual-contact-center/predictive-dialer

later and told them I had picked another company. I have gotten numerous telephone calls/solicitation mailings from them for many months. When I called them again and told them to quite harassing me they were quite rude.[8]

- Called my mobile phone to sell mobile alert. Claimed to be rated well by BBB. Hung up when I told her I would not give credit card on phone. Spam call to mobile to sell questionable product. Wanted credit card number on phone without security or ID …[9]

- This number calls me from a business called "Mobile Help" which are health emergency pendants and wrist item that know your medical conditions, summon medical or other emergency help such as falling and cannot get up.[10]

16.    In sending the text messages that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS") in violation of the TCPA. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making/sending numerous phone calls/texts simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

17.    Furthermore, Defendant calls and texts customers who have no "established business relationship" with Defendant and who are registered on the Do Not Call Registry.

18.    When placing these solicitation calls and sending these solicitation text messages to consumers, Defendant failed to obtain prior express written consent as required by the TCPA from cellular telephone owners/users to make such calls and send such text messages.

---

[8] http://bbb.org/south-east-florida/business-reviews/medical-alarms/mobilehelp-in-boca-raton-fl-92017186/reviews-and-complaints?section=complaints.

[9] *Id.*

[10] https://800notes.com/Phone.aspx/1-561-347-6255.

19.     Finally, even when consumers try to opt out of future calls and text messages by requesting to never be contacted again, Defendant continues to call and text them.

20.     Defendant knowingly made and sent (and continues to make and send) telemarketing calls and text messages without the prior express written consent of the recipients and knowingly continues to call and/or text message them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF DAVID VAN ELZEN

21.     On June 10, 2011, Van Elzen's cellular telephone number was registered on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls and text messages on his cellular telephone.

22.     Van Elzen started received a series of harassing telemarketing calls and text messages from MobileHelp in or around July of 2017 (and more than 30 days after his number was registered on the National Do Not Call Registry) from telephone number 970-414-1549.

23.     MobileHelp owns, operates, controls, or otherwise utilizes the telephone number 970-414-1549.

24.     Van Elzen received the first text message from MobileHelp on July 28, 2017 at 9:19 a.m. from 970-414-1549 that read, "Home DOC: Medical alert systems save hundreds of Americans every day.  Call now for your free brochure! Reply NO to opt out."



25.     MobileHelp then called Van Elzen from the same telephone number just thirteen

minutes later at 9:32 a.m. from 970-414-1549 using a prerecorded voice.  Van Elzen answered,

and, for the purpose of getting the calls and text messages to stop, Van Elzen waited on the line

long enough to be connected to a live representative.  Once connected to MobileHelp's live

representative, "Ron," Van Elzen demanded that Ron remove his name from MobileHelp's

contacts list and informed Ron that he was the National Do Not Call Registry.



26.     However, forty minutes later, MobileHelp sent Van Elzen another text message at 11:12 a.m. from 970-414-1549 that read, "David, we want to help find the right medical alert system.  Will you have time at lunch to talk about our FDA registered medical alert systems?  Call us!"



27.     Later that day at 5:43 p.m., Van Elzen received another text messages from MobileHelp using phone number 970-414-1549 that read, "We can help you get emergency medical monitoring in and out of the house.  Is now a good time for a call about options for a medical alert system?"



28.     The next day, on July 29, 2017 at 12:50 p.m., Van Elzen received another text message from MobileHelp using phone number 970-414-1549 that read, "Hi David! Our medical alert systems are FDA registered and can monitor inside and outside the home! Can you call back to learn more?"



29.     MobileHelp text-messaged Van Elzen again approximately four hours later that day, at 4:34 p.m. from 970-414-1549 that read, "Give me a call if you're still interested in finding the right medical alert system from MobileHelp.  If you're not interested, reply NO."



30.     On July 30, 2017, at 10:41 a.m., MobileHelp text messaged Van Elzen using phone number 970-414-1549: "I've been trying to connect you with a consultant to help you with an emergency medical monitoring system. Can you callback today so we can get started?"



31.     Despite Van Elzen's request for MobileHelp to stop contacting him, he received a second prerecorded call from Defendant using phone number 970-414-1549 on July 30, 2017 at 5:55 p.m.



32.     On August 3, 2017 at 6:48 p.m. Van Elzen received what sounded like a live telephone call on his cellular telephone from MobileHelp using phone number 920-487-4094.

The agent on the phone said that he was following up on a request for information, and that he was calling from MobileHelp. Van Elzen replied explaining that he never requested information and asked where MobileHelp got his information from. The agent replied that he couldn't identify the source, and said he would put Van Elzen on their internal do not call list.



33.     As shown, despite Van Elzen's request for MobileHelp to stop contacting him, MobileHelp continued to contact him using automated dialing technology and/or prerecorded or artificial voices during all relevant times.

34.     Van Elzen never consented in writing or otherwise to receive prerecorded telephone calls and text messages on his cellular telephone from MobileHelp.

35.     Van Elzen does not have a relationship with MobileHelp, has never provided his telephone number to MobileHelp, and has never requested that MobileHelp place calls to him or send him text messages or offer its services. Simply put, Van Elzen has never provided any form of prior express written consent to MobileHelp to place calls to him and/or send him text messages and has no business relationship with MobileHelp.

36.     MobileHelp at all times is and was aware that the above-described prerecorded telephone calls and autodialed text messages were and are being made to consumers like Van Elzen who had not consented to receive them; whose telephone numbers have been registered with the National Do Not Call Registry; and who requested that MobileHelp cease contacting them.

37.     By making unauthorized prerecorded calls and autodialed text messages to consumer's cellular telephones as alleged herein, MobileHelp has caused consumers actual, concrete harm and annoyance. In the present case, a consumer could be subjected to many unsolicited prerecorded telephone calls and text messages, as MobileHelp's opt-out system does not work.

38.     In order to redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded and/or autodialed telephone calls and text messages to cellular telephones.

39.     On behalf of the Classes, Plaintiff seeks an injunction requiring MobileHelp to cease all unauthorized prerecorded telephone calling and text messaging activities, declaratory relief establishing that MobileHelp's calls violated the TCPA, and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

40.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and four Classes defined as follows:

> **Prerecorded No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's telephone number; (3) for the purpose of marketing Defendant's

products and services; and (4) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiff.

**Text Message No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant (or a third person acting on behalf of Defendant) texted; (2) on the person's cellular telephone number; (3) for the purpose of marketing Defendant's products and services; and (4) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to text the Plaintiff.

**Stop Call Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant (or a third person acting on behalf of Defendant) called and/or text messaged, (2) on the person's cellular telephone number, (3) for the purpose of marketing Defendant's products and services, (4) after the person informed Defendant that s/he no longer wished to receive calls and/or text messages from Defendant.

**Do Not Call Registry Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called and/or text messaged more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of marketing Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

41. The following people are excluded from the Classes: any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the Class Definitions

following the completion of class discovery regarding the size and scope of the Classes and the manner by which Defendant claims it obtained prior express consent, oral or written.

42.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant made prerecorded telephone calls and sent text messages to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records and by reference to other objective criteria.

43.     **Commonality**: There are several questions of law and fact common to the claims of Plaintiff and the Classes on which every Class member's claim will either succeed or fail, and which will be proven using common evidence. Such common questions for the Classes include, without limitation:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant systematically made prerecorded telephone calls and/or sent text messages to individuals who did not provide Defendant and/or its agents with their prior express written consent to receive such phone calls and/or text messages;

(c)     Whether Defendant made and/or sent the calls and/or text messages with the use of an ATDS;

(d)     Whether Defendant systematically made multiple telephone calls and/or text messages within the same 12-month period to consumers who telephone numbers were registered with the National Do Not Call Registry;

(e)     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

(f)     Whether Defendant systematically made telephone calls and/or sent text messages to consumers after they explicitly asked not to be contacted by Defendant.

44.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is a member of the Classes, and if Defendant violated the TCPA to call Plaintiff then it violated the TCPA to call the other Class members. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

45.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

46.     **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

47.     **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant properly obtained prior express written consent to call and whether Defendant used an ATDS go to the very heart of the case and

are facts on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

48. **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff and the Prerecorded No Consent Class)**

49. Paragraphs 1-48 are re-alleged and incorporated by reference herein.

50. Defendant made unwanted prerecorded solicitation telephone calls to telephone numbers belonging to Plaintiff and the other members of the Prerecorded No Consent Class—without their prior express written consent.

51. Defendant's calls were made for the purpose of marketing Defendant's business and services.

52.     At no time did Defendant obtain prior express written consent that disclosed to the called party that the called party consented to be called with an automatic telephone dialing system or pre-recorded voice or that providing such consent was not a condition (direct or indirect) of any purchase of any goods or services.

53.     By making unsolicited prerecorded telephone calls to Plaintiff and members of the Prerecorded No Consent Class's cellular telephones without prior express written consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

54.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Prerecorded No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls/text messages on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

55.     In the event that the Court determines that Defendant's conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Prerecorded No Consent Class.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff and the Text Message No Consent Class)**

56.     Paragraphs 1-48 are re-alleged and incorporated by reference herein.

57.     Defendant sent unwanted solicitation text messages to telephone numbers belonging to Plaintiff and the other members of the Text Message No Consent Class—without their prior express written consent.

58.     Defendant's text messages were made for the purpose of marketing Defendant's business and services.

59.     At no time did Defendant obtain prior express written consent that disclosed to the texted party that said party consented to be sent a text message from Defendant with an automatic telephone dialing system or pre-recorded voice or that providing such consent was not a condition (direct or indirect) of any purchase of any goods or services.

60.     Further, Defendant sent the text messages using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that sent the text messages to Plaintiff and other members of the Text Message No Consent Class simultaneously and without human intervention.

61.     By sending unwanted solicitation text messages to Plaintiff and members of the Text Message No Consent Class's cellular telephones without prior express written consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

62.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Text Message No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited text messages on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

63.     In the event that the Court determines that Defendant's conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Text Message No Consent Class.

### THIRD CAUSE OF ACTION
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff and the Stop Call Class)**

64.     Paragraphs 1-48 are re-alleged and incorporated by reference herein.

65. Defendant made unsolicited and wanted telemarketing calls and sent unwanted solicitation text messages to telephone numbers belonging to Plaintiff and the other members of the Stop Call Class on their cellular telephone *after* the person had informed Defendant that he or she no longer wished to receive such calls and/or text messages from Defendant.

66. Defendant sent the text messages using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

67. By making unsolicited telephone calls and sending unsolicited text messages to Plaintiff and members of the Stop Call Class's cellular telephones after they requested to no longer receive calls and/or text messages, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call and/or text them without their prior express written consent.

68. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Stop Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls/text messages on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

69. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Call Class.

**FOURTH CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiff and Do Not Call Registry Class)**

70. Paragraphs 1-48 are re-alleged and incorporated by reference herein.

71.     The TCPA, specifically 47 U.S.C. § 227(c), provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

72.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

73.     47 C.F.R. § 64.1200(e), in turn, provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" (the "Report and Order").

74.     And the Report and Order thereafter states as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[11]

75.     47 C.F.R. § 64.1200(d) provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing

---

[11] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

calls made by or on behalf of that person or entity. The procedures instituted must meet the

following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

76.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated,

multiple telephone solicitations within a 12-month period to wireless telephone subscribers such

as Plaintiff and the Do Not Call Registry Class members, who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls and/or text messages from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

77.     Defendant made and/or sent more than one unsolicited telephone call and/or text message to Plaintiff and members of the Do Not Call Registry Class within a 12-month period without their prior express written consent to receive such calls. Plaintiff and members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

78.     Defendant also violated 47 C.F.R. § 64.1200(d) by initiating calls and/or text messages for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for having a written policy, available on demand, for maintaining a list of persons who request not to receive telemarketing calls from them, without training its employees or personnel in the use of any such internal do not call list, and in not recording and honoring do not call requests made by consumers.

79.     Defendant further violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call/text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

80.     As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled,

*inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Van Elzen, individually and on behalf of the Classes, prays for the following relief:

81.     An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing his counsel as Class Counsel;

82.     A declaratory judgment declaring that Defendant's prerecoreded calls and autodialed text messages violated the TCPA, that Defendant's equipment constitutes an automatic telephone dialing system under the TCPA, that Defendant failed to obtain prior express written consent to call and/or text message Plaintiff or any of the Class members, that Defendant failed to maintain an internal Do Not Call list and to train its personnel engaged in telemarketing in the existence and use of such a list, and that Defendant failed to honor stop-call requests to Plaintiff and the members of the Stop Call Class;

83.     An award of actual and statutory damages, to be trebled in the event the Court finds that Defendant has acted knowingly and willfully, to be paid into a common fund for the benefit of the Class Members;

84.     An injunction requiring Defendant and its agents to cease all unsolicited telephone calling and unsolicited text-messaging activities, to honor do not call requests, to provide a domestic number for opting out, and otherwise protecting the interests of the Classes;

85. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system or prerecorded voice without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls and/or text messages made with such equipment;

86. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

87. An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA and trained its employees in the existence and use of its internal Do Not Call list;

88. An award of reasonable attorneys' fees and costs to be paid from the common fund; and

89. Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: August 23, 2017                    **DAVID VAN ELZEN**, individually and on behalf of all others similarly situated,

By: s/Stefan Coleman
One of Plaintiff's Attorneys

Stefan Coleman (00030188)
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd., 28th floor
Miami, Florida 33131
Telephone: (888) 333-9427
Facsimile: (888) 498-8946

Attorneys for Plaintiff and the putative Classes